# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RACHELLE HARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-11-316-RAW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rachelle Harrison (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 1, 1967 and was 42 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a factory worker. Claimant alleges an inability to work beginning January 31, 2007 due to limitations resulting from pain in her hands, shoulders,

3

right ankle, right knee, right hip, and back.

**Procedural History**

On October 28, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted before ALJ Michael Kirkpatrick on May 24, 2010 in Fort Smith, Arkansas. On August 16, 2010, the ALJ issued an unfavorable decision on Claimant's applications. On July 25, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to

find all of Claimant's severe impairments at step two; (2) failing to properly address Claimant's obesity and the work limitations caused by it in accordance with the regulations and listings; (3) engaging in a faulty credibility determination; (4) reaching an improper RFC; and (5) improperly applying the grids.

**Step Two Analysis**

In his decision, the ALJ determined that Claimant suffered from the severe impairments of morbid obesity and degenerative joint disease. The ALJ found Claimant was 5'6" tall and weighed 397 pounds with a BMI of 64.1 on April 29, 2010. By May 24, 2010, Claimant weighed 405 pounds and had a BMI of 65.4. (Tr. 11). Claimant reported that she suffered from pain stemming from an automobile accident. Id. Claimant also stated she had a history of multiple kidney stones. The ALJ found this condition would not be expected to interfere with Claimant's ability to work. (Tr. 12). The ALJ concluded Claimant could not perform her past relevant work but retained the RFC to perform a full range of sedentary work. (Tr. 15, 17).

On January 8, 2009, Dr. Ronald Schatzman performed a consultative physical examination of Claimant. Claimant complained of back, hip, and hand pain arising from a motor vehicle accident in 2003. Claimant stated she experienced increased pain with

5

standing, but found some relief when she laid down. Dr. Schatzman found Claimant to be positive for joint stiffness, joint swelling, and muscle pain. He also found she suffered from depression and anxiety. (Tr. 202-03).

Upon testing, Dr. Schatzman found Claimant had normal range of motion in her upper and lower extremities. Deep tendon reflexes were hypoactive and peripheral pulses were present though difficult to feel. Straight leg rasing was negative. Claimant reported back pain. She bent forward to 65 degrees but back bending and side bending were within normal range. Dr. Schatzman could not see evidence of tenderness or muscle spasms and there was no definite weakness. Claimant's cervical spine had normal range of motion. He noted Claimant walked with a broad based gait, slowly, but is stable and does not require walking aids. Claimant would not attempt to do heel and toe walking. (Tr. 203). Although Dr. Schatzman reported Claimant had a consistent history of recurrent dislocation of both shoulders after she does any pushing or pulling, he found an examination of her shoulders was essentially normal. (Tr. 204).

On March 4, 2009, Claimant underwent a Mental Status/Diagnostic Examination performed by Dr. Denise LaGrand. Claimant reported that she did not sleep well, experience short-

term memory loss and poor anger management beginning in 2002 after an automobile accident. Her problems became worse in 2006 after she lost her job. Claimant stated her pain made it difficult to concentrate. Claimant reported she was on Cymbalta but could not afford to take it. (Tr. 209).

Dr. LaGrand found Claimant to have organized, logical, and goal-directed thoughts and was able to stay focused for the exam. He memory was consistent with her IQ. Dr. LaGrand observed a depressed and angry affect. (Tr. 211). Claimant reported symptoms of depression with sleep disturbance, low energy level, feelings of helplessness and hopelessness, depressed mood most days, loss of interests in previously enjoyed activities, and impairment of social relationships. Id. Dr. LaGrand diagnosed Claimant at Axis I: Pain Disorder, due to general medical condition, Major Depressive Disorder, mild; Axis II: No Diagnosis; Axis III: Deferred; Axis IV: Occupational Problems; and Axis V: GAF of 60. (Tr. 212-13). Based upon Claimant's overall cognitive level, her ability to think abstractly, and her ability to function appropriately socially and emotionally, Dr. LaGrand found Claimant's judgment was adequate. She also found appropriate orientation and contact with reality, appropriate abstract reasoning, and appropriate emotional control. Dr. LaGrand also

7

determined that Claimant's ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors and coworkers to be adequate. (Tr. 213).

Claimant first contends the ALJ should have found her kidney stone condition to be a severe impairment at step two. The record indicates Claimant sought treatment for kidney stones on August 4, 2007 and flank pain on two other occasions. (Tr. 272, 275, 283). Claimant opines this demonstrates "the level of absenteeism that she would experience as she was battling this type of ailment. . . ."

A claimant bears the burden at step two to present evidence that she has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 146 & n. 5 (1987). While the showing required is described as "de minimis," the claimant "must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (quotation omitted).

The ALJ's step two task is to determine, based on the record, whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). An impairment is "not severe if it does not significantly limit [a claimant's] ability to do basic work activities." 20 C.F.R. §

404.1521(a). This Court agrees with the ALJ that the severity of this alleged impairment is not sufficient to cause more than a minimal effect upon Claimant's ability to work.

Claimant next asserts the ALJ failed to properly consider Claimant's mental impairment of depression at step two. Dr. LaGrand found Claimant's condition to be mild and concluded that her depression would cause little limitation upon her ability to engage in work-related activities. This Court finds no error at step two in the ALJ's failure to include depression as a severe impairment.

### Consideration of Claimant's Obesity

Claimant contends the ALJ minimized the effects of her extreme obesity, concluding "[t]ruly, 400 pounds on such a small frame affects each and every part of a woman's body, as well as her perception of self." This is obviously an irrelevant opinion statement by counsel which exceeds his expertise. An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments). "[O]besity may increase the severity

of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id.; see also, Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991)(an ALJ "must consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe medical disability.")

"Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the medical record. Id.

Additionally, the severity of Claimant's obesity has some bearing upon the effect on other impairments. Claimant's BMI of 64.5 is indicative of a level III in severity where "[g]enerally, physicians recommend surgery" when obesity reaches this level. Id.

The ALJ engaged in an evaluation of the effects of obesity upon her back, hips, and ankles. (Tr. 15). This Court cannot conclude that the ALJ failed in his evaluation of Claimant's morbid obesity.

### Credibility Determination

Claimant also contends the ALJ engaged in a faulty credibility

analysis "by making the conclusory statement that the claimant was only credible to the extent that the claimant's testimony was not inconsistent with the RFC which the ALJ formulated for her. . . ." The ALJ did considerably more than Claimant acknowledges. He went through Claimant's specific testimony of limitation and cited to the medical record to discount each claim. (Tr. 15-16).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on

11

his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ satisfactorily tied his conclusions on credibility to the medical record. This Court finds no error in his analysis.

### RFC Determination

Claimant argues that the ALJ's conclusion that she can perform a full range of sedentary work is not supported by the record because the ALJ failed to include the additional impairments of depression and obesity. As stated, this Court finds no error in the omission of depression and the evaluation of obesity as impairments. The ALJ's RFC determination is fully supported by the record.

### Application of the Grids

As a final issue, Claimant contends the ALJ erred in his application of the grids. The ALJ determined that the application of Medical-Vocational Rule 201.28 precluded a finding of disability. (Tr. 18). Claimant asserts the presence of non-exertional impairments prevented the ALJ from applying the grids. In order to help evaluate the step five requirement, whether or not there are sufficient jobs in the economy that the claimant can perform given his or her age, education, and work experience, the Social Security Administration has created Medical-Vocational Guidelines, also known as "the grids." *See* 20 C.F.R. § 404.1567; 20 C.F.R. Pt. 404, Subpt. P, App. 2; <u>Trimiar v. Sullivan</u>, 966 F.2d 1326, 1332 (10th Cir. 1992). Five degrees of residual functional capacity are outlined in the grids by general exertional level-sedentary, light, medium, heavy, and very heavy exertion. 20 C.F.R. § 404.1569a; <u>Trimiar</u>, 966 F.2d at 1332 n. 22. Residual functional capacity reflects "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). If the ALJ finds that a claimant's exertional capacity, education, age, and skills fit precisely within the criteria of a particular grid level, the ALJ may conclude the claimant is not disabled. <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088

(10th Cir. 1999). The Grids, however, may not be used where a claimant has nonexertional impairments which further limit the range of jobs he can do but, rather, the Grids may only be used as a guideline in evaluating the case. Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

Non-exertional limitations affect a claimant's ability to meet the demands of jobs that do not involve strength. 20 C.F.R. § 404.1569a(a). Examples cited include "(1) difficulty functioning because you are nervous, anxious, or depressed; (2) difficulty with maintaining attention or concentration; (3) difficulty understanding or remembering detailed instructions; (4) difficulty seeing or hearing; (5) difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; (6) difficulty with manipulative or postural functions such as reaching, handling, stooping, climbing, or crawling." 20 C.F.R. § 404.1569a(c).

Claimant identifies non-exertional impairments of limitations imposed by her major depression, a requirement that she change positions "on a fairly frequent basis", an inability to stand and walk for two hours per day, and obesity restrictions. The medical record does not support a finding of limitation due to these conditions which would preclude sedentary work. Accordingly, this

Court finds no error in the application of the grids.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of July, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE